IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20–cv–03451–RMR–KMT

KEVIN BELLINGER,

   Plaintiff,

v.

ANDRE MATEVOUSIAN, and
B. TRUE,

   Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on "Defendants' Motion to Dismiss Amended Complaint" (Doc. No. 25 [Mot.], filed May 25, 2021). Plaintiff did not file a response.

### STATEMENT OF THE CASE

Plaintiff, who proceeds *pro se*, filed his First Amended Prisoner Complaint on January 11, 2021. (Doc. No. 9 [Am. Compl.].) Plaintiff asserts jurisdiction pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (*Id.* at 3.)

Plaintiff is incarcerated in the Bureau of Prisons ("BOP") at the United States Federal Penitentiary–Administrative Maximum ("ADX") in Florence, Colorado. (*Id.* at 2.) Plaintiff asserts claims against Defendant Andre Matevousian, the former warden at ADX, and B. True, the current warden at ADX. (*Id.* at 2–3.) Plaintiff alleges that in 2018 and 2019, the defendants improperly imposed encumbrances on his "Inmate Deposit Fund Account" ("inmate account")

and retaliated against him, in violation of the First and Fifth Amendments. (*See generally,* Am. Compl.)

Plaintiff alleges that in September 2018, after he refused to sign a new Inmate Financial Responsibility Program ("IFRP") contract that would have increased the amount of his quarterly IFRP payments from $25.00 to $175.00, his case manager imposed a $675.00 encumbrance on Plaintiff's inmate account due to "IFRP refusal/prevent depletion of funds." (*Id.*, ¶¶ 18, 21.) Plaintiff states he spoke to Defendant Matevousian about the encumbrance, but Defendant Matevousian cut Plaintiff off and said "complaining is only going to make it worse." (*Id.*, ¶ 22.) Plaintiff states the encumbrance exceeded the amount of his total restitution obligation, and he complained to both the D.C. Correctional Information Council ("CIC"), and two different attorneys about the encumbrance. (*Id.*, ¶¶ 22–25.)

Plaintiff alleges that in November 2018, Defendant Matevousian "retaliated" against Plaintiff for his complaints by imposing a new $150.00 encumbrance "under a false pretext." (*Id.*) Specifically, Plaintiff contends that although Defendant Matevousian ostensibly imposed this encumbrance because the $150.00 deposit was made by an individual who had deposited funds into multiple inmate accounts, Defendant Matevousian did not advise Plaintiff which individual, specifically, had attempted to make this deposit. (*Id.*, ¶¶ 27–29.) Plaintiff asserts that his funds had never been encumbered on this basis before, and that his authorized contacts had never deposited funds into the accounts of any other inmates housed at the ADX. (*Id.*, ¶¶ 30–32.) Plaintiff asserts that the "multiple inmates" rationale was pretextual, and that the encumbrance was instead imposed in retaliation for his previous complaints about Warden Matevousian. (*Id.*, ¶ 27.)

2

Plaintiff states he continued to complain to Defendant Matevousian about the unjustified encumbrances, but Defendant Matevousian did not respond.  (*Id.*, ¶ 34.)  In January 2019, Plaintiff complained to his attorneys, the CIC, the Washington Lawyers Committee, the U.S. Department of Justice Civil Rights Investigation Division, and the Office of Inspector General about the encumbrances.  (*Id.*, ¶¶ 35.)  Plaintiff alleges, as a direct result of the complaints, his attorneys' phone numbers were blocked from calling, Plaintiff was no longer able to purchase anything from the commissary, and Defendant Matevousian imposed an "administrative hold on future deposits to prevent the depletion of [Plantiff's] funds."  (*Id.*, ¶¶ 36–37.)

Finally, Plaintiff alleges that on August 1, 2019, a family member attempted to deposit $100.00 into Plaintiff's inmate account, and that Defendant Matevousian retaliated against Plaintiff again and encumbered the funds without providing notice to Plaintiff.  (*Id.*, ¶¶ 41–42.)  Plaintiff asserts that this family member had made hundreds of dollars' worth of deposits into Plaintiff's account "over the years" without issue, and that this individual had "never deposited funds into the account of any [other] inmate housed at FCC Florence ADX."  (*Id.*, ¶¶ 43–44.)

Plaintiffs asserts claims against Defendant Matevousian in his official and individual capacities (*id.* at 2) and against Defendant True in his official capacity (*id.* at 3.)  Plaintiff seeks a declaration that the Defendant Matevousian's actions violated the Constitution, as well as "permanent injunctive relief" requiring Defendants to release Plaintiff's currently encumbered funds, and to revise the ADX's deposit procedures to provide additional notice and process when funds are encumbered.  (*Id.* at 20.)

Defendants move to dismiss the claims against them in their entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).  (*See* Mot.)

3

## STANDARDS OF REVIEW

### A.     Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.     *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than

the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  The dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

C. *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

6

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

*A.    Standing*

Defendants argue that Plaintiff lacks standing to challenge the encumbrance imposed in September 2018 and February 3, 2019, because they were imposed pursuant to a practice that is no longer in place at the ADX and were lifted from Plaintiff's account nearly a year before Plaintiff filed this action. (Mot. at 4–6.)

"Lack of standing divests the court of subject matter jurisdiction[.]" *Jepsen v. Texaco, Inc.*, 68 F.3d 483 (10th Cir. 1995). "To establish Article III standing, the plaintiff bears the burden of demonstrating the following three elements: (1) an injury in fact; (2) a causal connection between the injury and the challenged action; and (3) a likelihood that a favorable decision will redress the injury." *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011).

"Although a plaintiff may present evidence of a past injury to establish standing for retrospective relief, he must demonstrate a continuing injury to establish standing for prospective relief." *Jordan*, 654 F.3d at 1019. "Past exposure to illegal conduct does not in itself show a

7

present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). To satisfy standing requirements, "[a] plaintiff's continued susceptibility to injury must be reasonably certain." *Jordan*, 654 F.3d at 1024. This principle applies to both prospective injunctive and declaratory relief. *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991) ("[A] plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future.").

To establish standing, Plaintiff also must set forth facts showing that a favorable judgment will redress a discrete injury. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005). Absent any continuing or imminent violation, there is no redressability, as there is no harm for prospective injunctive or declaratory relief to remedy. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998) ("If respondent had alleged a continuing violation or the imminence of a future violation, the injunctive relief requested would remedy that alleged harm. But there is no such allegation here . . . ."); *see also Jordan*, 654 F.3d at 1025 (applying same principle to request for declaratory relief).

On a motion to dismiss challenging the plaintiff's standing, the court must treat all allegations in the complaint as true and draw all inferences in light of the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). However, if the complaint itself does not establish the plaintiff's standing, and the plaintiff does not produce sufficient evidence by affidavit or otherwise to do so, dismissal of the complaint is appropriate. *Id.* at 501–02.

Plaintiff has not shown that, at the time he filed this action, the September 2018 and February 3, 2019, encumbrances were subjecting him to any ongoing or imminent injury. As

explained in the Declaration of FCC Complex Trust Fund Supervisor K. Dell attached to the Motion to Dismiss, these encumbrances were both imposed pursuant to a practice known as "FRP Refusal," which was a practice instituted by Defendant Matevousian that allowed inmates' funds to be encumbered when they refused to enter into payment plans to pay their court-ordered fines and restitution.  (*See* Mot., Ex. 1, Dell Decl. ¶¶ 1, 7.)  This practice was discontinued in the Fall of 2019, when Defendant Matevousian left the institution and Defendant True assumed the position of ADX Warden.  (*See* Mot., Ex. 2, Dodge Decl. ¶ 7.)  As a result of Defendant True's decision to cease imposing FRP refusal encumbrances, the September 2018 and February 3, 2019, encumbrances were lifted from Plaintiff's inmate account in January 2020 and February 2020, respectively—nearly a year before Plaintiff filed this action in November 2020.  (*Id.*)  Defendant True has not reinstated the practice of encumbering inmate accounts based on FRP refusal and has no plans to reinstate that practice in the future.  (*Id.* ¶ 8.)

Plaintiff cannot demonstrate the existence of an ongoing or imminent injury with respect to these encumbrances.  Plaintiff thus lacks standing to challenge the September 2018 and February 3, 2019, encumbrances.  *Cf. Williams v. Samuels*, 2015 WL 4935633, at *6–7 (M.D. Fla. Aug. 18, 2015) ("The Court also notes that Plaintiff's due process claims are moot because his account is no longer encumbered and he received his property."); *Colon v. Berkebile*, No. 11–cv–1169–WJM–KMT, 2014 WL 485720, at *4 (D. Colo. Feb. 6, 2014) (same).

Plaintiff's claims regarding the September 2018 and February 3, 2019, encumbrances should be dismissed without prejudice.

### B.     *Fifth Amendment Due Process*

Plaintiff asserts that the imposition of the above-described encumbrances violated his Fifth Amendment procedural due process rights because he did not receive sufficient pre-deprivation notice and process. (Am. Compl., ¶¶ 49–55.)

"In considering a procedural-due-process claim [courts] … ask two questions: (1) Did the plaintiff possess a protected property or liberty interest to which due process protections apply? And if so, (2) was the plaintiff afforded an appropriate level of process?" *Al-Turki v. Tomsic*, 926 F.3d 610, 614 (10th Cir. 2019).

First, "[t]o determine whether a protected property interest is at stake, courts in this Circuit ask whether the 'prison condition complained of presents the type of atypical, significant deprivation in which a State might conceivably create a liberty or property interest.' " *Stanley v. McMillian*, No. 12–cv–02944–PAB–CBS, 2014 WL 788059, at *2 (D. Colo. Feb. 26, 2014) (quoting *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999)), *aff'd*, 594 F. App'x 478 (10th Cir. 2014). "This inquiry focuses on the 'nature of the deprivation' as opposed to the 'language of a particular [] regulation.' " *Id.* (quoting *Sandin v. Connor*, 515 U.S. 472, 481 (1995)).

Next, assuming the existence of a protected property interest, courts evaluate whether the procedures attendant to the deprivation of that interest were constitutionally sufficient. *Id.* "[A]n unauthorized intentional deprivation of property does not constitute a violation of the procedural requirements of the Due Process Clause . . . if a meaningful postdeprivation remedy for the loss is available." *Coburn v. Wilkinson*, 700 F. App'x 834, 837 (10th Cir. 2017) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). A violation of due-process procedures may exist, however,

"if the postdeprivation procedure is 'unresponsive or inadequate.' " *Id.* (quoting *Freeman v. Dep't of Corrs.*, 949 F.2d 360, 362 (10th Cir. 1991)).

Defendants argue, citing *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006), that Plaintiff has no property right in the $250 dollars' worth of encumbrances on his inmate account. (Mot. at 9.) In *Steffey*, the prison in which the plaintiff was incarcerated had a rule preventing an inmate from receiving money from family members of any other inmate and allowing the prison to confiscate any monies sent to an inmate in violation of this rule. *Steffey*, 461 F.3d at 1220. The mother of another inmate sent the plaintiff a $50.00 money order. *Id.* The prison notified the plaintiff and confiscated the money as contraband. *Id.* The Tenth Circuit stated that "the seizure and forfeiture of currency as contraband is a typical incident of prison life, and is not a significant property interest deprivation." *Id.* at 1223 (citing *Cosco*, 195 F.3d at 1224). The Court held that plaintiff had no due process property right to receive a contraband money order while in prison. *Id.* at 1221.

Here, while Plaintiff states that the funds were encumbered because the BOP determined that a depositor had attempted to deposit funds into multiple inmate accounts (Am. Compl., ¶¶ 28, 44), Plaintiff disputes that the funds actually *were* contraband. Plaintiff specifically states that his authorized family and friend contacts have never deposited funds into the accounts of other inmates housed at ADX. (*Id.*, ¶¶ 31, 44.) This case is unlike *Steffey*, which was decided on a motion for summary judgment in which evidence was presented that the plaintiff admitted during his administrative grievance proceedings that the woman who attempted to send him money was the mother of another inmate. *Steffey*, 461 F.3d at 1221. Here, the record presented prevents the court from making a determination about whether the funds sent to the plaintiff

11

were sent by someone who had deposited funds into other inmate accounts and, therefore, were contraband. "To determine the nature of the property interest at stake in this case, the Court would have to apply the rule announced in *Sandin* to inmate funds whose status as contraband is disputed." *Stanley*, 2014 WL 788059, at *3. The court need not decide this question, however, because, as explained below, even assuming that a protected property interest is at stake, the facts alleged establish that Plaintiff was afforded adequate post-deprivation process. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

An inmate's Fifth Amendment due process rights are not violated where the prison "provide[s] him with an administrative remedy to challenge the destruction of his property." *Williams v. Mestas*, 355 F. App'x 222, 224 (10th Cir. 2009) (citing *Hudson*, 468 U.S. at 533) (explaining an intentional deprivation of property does not constitute a violation of the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available"); *see also Williams v. Samuels*, 2015 WL 4935633, at *7 (M.D. Fla. Aug. 18, 2015) ("[F]ederal courts have held that because the BOP provides an administrative remedy to challenge unauthorized deprivations of property, prisoners cannot assert constitutional claims for intentional deprivation of property." (collecting cases)).

Plaintiff acknowledges that he was able to challenge the encumbrances placed on his account through the BOP's administrative remedy process. (Am. Compl., ¶¶ 39, 62.) Plaintiff contends, however, that the BOP did not provide him with sufficient pre-deprivation information about the encumbrances such that he could make "meaningful use" of the grievance process. (*Id.*, ¶ 62.) Plaintiff fails to include facts showing why this is so. (*See generally,* Am. Compl.) He does not, for example, explain the course of communication between himself and the BOP

12

during the administrative remedy process, provide information regarding what the BOP told him about the encumbrances in response to his grievances, or explain, specifically, why the post-deprivation remedy process was not "meaningful." Although Plaintiff expresses that he was dissatisfied with the outcome of the grievance process, he does not allege facts plausibly showing that the process was "inadequate" or "unresponsive." *See Coburn v. Wilkinson*, 700 F. App'x 834, 837 (10th Cir. 2017) ("Coburn used the available inmate-grievance procedures to have his claim submitted, investigated, and reviewed by the warden. It was denied. Coburn then filed an appeal that was also denied. Coburn doesn't provide evidence that the process was unresponsive or inadequate. Thus, we find that Coburn received the full measure of due process to which he was entitled."). Accordingly, Plaintiff has not plausibly shown that he lacked a meaningful post-deprivation remedy, and his due process claim should be dismissed with prejudice.

C.  *First Amendment Retaliation*

Plaintiff asserts that the November 2018 and August 1, 2019, encumbrances were imposed in retaliation for Plaintiff submitting grievances and complaints about Defendant Matevousian. (Am. Compl., ¶¶ 33, 37, 41.)

To state a claim for First Amendment retaliation, Plaintiff must allege facts plausibly showing that he: (1) was engaged in constitutionally protected activity; (2) that the defendant's actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

"The third element 'requires the plaintiff to allege specific facts that, if credited, establish that but for the defendant's improper retaliatory motive the incidents to which he refers … would not have taken place.' " *Thomas v. Rogers*, No. 19–cv–01612–RM–KMT, 2020 WL 2812724, at *4 (D. Colo. Apr. 27, 2020) (quoting *Allen v. Avance*, 491 F. App'x 1, 6 (10th Cir. 2012)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). And, although "temporal proximity" is a relevant factor in assessing the third element, *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010), "temporal proximity between [protected activity] and the alleged retaliatory conduct, without more, does not allow for an inference of retaliatory motive," *Trant v. Okla.*, 754 F.3d 1158, 1170 (10th Cir. 2014).

Plaintiff alleges that the November 2018 encumbrance was imposed close in time to his complaints to and about Defendant Matevousian, and that he had not experienced this type of encumbrance before. (*See* Am. Compl., ¶¶ 21–28.) Defendants are correct that these allegations are insufficient to plausibly allege a retaliatory motive that was the "but for" cause of the encumbrance absent some facts showing that the basis for the encumbrance was incorrect. *Trant*, 754 F.3d at 1170. However, Plaintiff also alleges that within days of his receipt of a Notice of Encumbrance on October 3, 2018, he "attempted to advise Defendant Matevousian that the encumbrance was in error," and Defendant Matevousian curtly stated, "complaining is only going to make it worse." (Am. Compl., ¶ 22.) The court finds that these allegations are sufficient, at this stage, to allege a retaliation claim as to the November 2018 encumbrance.

Plaintiff alleges that a final encumbrance was imposed on August 1, 2019. (Am. Compl., ¶¶ 40–41.) Although Plaintiff conclusorily asserts that this encumbrance was imposed in

14

retaliation for Plaintiff's grievances about former Warden Matevousian's "improper encumbrances," he does not allege facts to support this assertion. Plaintiff states he "filed administrative grievances regarding the encumbrances and retaliatory mistreatment" (*id.*, ¶ 37), but he fails to state when he filed the alleged grievances or to identify what, specifically, he alleged in his grievances with respect to Defendant Matevousian. (*See id.*, ¶¶ 37–40.) Without this type of factual detail, Plaintiff cannot nudge his claim that the August 1, 2019, encumbrance was "retaliatory" from the "conceivable" to the "plausible." *See, e.g., Twombly*, 550 U.S. at 547.

Defendants' motion to dismiss the retaliation claim regarding the November 2018 encumbrance should be denied, and the motion to dismiss the retaliation claim regarding the August 1, 2019, encumbrance should be granted.

**D.**      ***Claims Against Defendant Matevousian in His Individual Capacity***

Finally, the court notes that Plaintiff sues Defendant Matevousian in his official and individual capacities. (*See* Am. Compl. at 2.) Plaintiff seeks injunctive and declaratory relief, which can only be provided by government officials in their official capacities. Moreover, Plaintiff provides no allegations in the Amended Complaint that would allow the court to infer that Defendant Matevousian has any power in his individual capacity to provide the relief Plaintiff requests. Courts have repeatedly held that relief that may only be obtained from government officials in their official capacities may not also be sought from them in their individual capacities. *See, e.g., Smith v. Plati*, 56 F. Supp. 2d 1195, 1203 (D. Colo. 1999); *Nahno-Lopez v. Houser*, 627 F. Supp. 2d 1269, 1284–85 (W.D. Okla. 2009).

Accordingly, the individual-capacity claims against Defendant Matevousian should be dismissed.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that the "Defendants' Motion to Dismiss Amended Complaint" (Doc. No. 25) be **GRANTED in part** and **DENIED in part** as follows:

1. Plaintiff's claims regarding the September 2018 and February 3, 2019, encumbrances should be dismissed without prejudice for lack of subject matter jurisdiction;

2. Plaintiff's due process claims should be dismissed with prejudice for failure to state a claim upon which relief can be granted;

3. Plaintiff's retaliation claim regarding the August 1, 2019, encumbrance should be dismissed with prejudice for failure to state a claim upon which relief can be granted;

4. Plaintiff's individual-capacity claims against Defendant Matevousian should be dismissed without prejudice; and

5. Defendants' motion to dismiss the retaliation claim regarding the November 2018 encumbrance should be denied.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."

*United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar de novo review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation de novo despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).

Dated this 20th day of January, 2022.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge